**CROWN LIFE INSURANCE COMPANY,**
Plaintiff/Appellee,

v.

**Roger K.C. STOKES,**
Defendant/Appellant.

No. 85–3887.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1985.

Decided July 14, 1986.

William A. Fuhrman, Boise, Idaho, for plaintiff/appellee.

John P. Howard, Boise, Idaho, for defendant/appellant.

Before KENNEDY and REINHARDT, Circuit Judges, and STEPHENS *, District Judge.

STEPHENS, District Judge.

On September 1, 1977, Crown Life Insurance Company, a Canadian corporation, entered into a written agreement with L. Ray Drake appointing him General Agent for Crown Life in Idaho for the purpose of selling insurance policies. Drake did business thereafter as Crown Associates of Idaho. On April 15, 1978, Crown Associates executed an agreement which authorized Roger K.C. Stokes the appellant, to solicit policies on its behalf. Stokes was licensed by the State of Idaho as a life and disability insurance agent.

On March 15, 1982, Stokes, accompanied by another insurance salesman, Bob Froelich, obtained life insurance applications for Crown Life policies from Max and Janis Christiansen. Pursuant to Crown Life's underwriting requirements, the Christiansens were informed that they either had to take a medical examination or submit an attending physician's report (APR) before their applications would be complete. An APR can be submitted in lieu of an additional examination report if an applicant has undergone a physical examination within the six months preceding the application.

The Christiansens submitted a check for the first premium payment and agreed that April 1, 1982, would be the effective date for the policies. According to Stokes' deposition, Crown Life's receipt for amount paid and Conditional Insurance Agreement was issued to them. This document provided life insurance coverage by Crown Life on the same terms as the policy applied for from the date of their applications until the policy applied for becomes effective, provided that the applications were complete and a medical examination or APR showed them to be insurable risks.

Max Christiansen proceeded to have a medical examination and his policy was issued. Janis Christiansen signed the authorization forms to make information from a recent medical examination available to Crown Life. On March 19, 1982, Crown Associates sent Janis' physician, Dr. Coppin, the APR for his completion. On March 24, 1982, Dr. Coppin filled out the APR and sent it to Crown Life. On April 8, Crown Associates was informed by Crown Life that Coppin's APR was lacking necessary medical information and that a medical examination would be required. Crown Associates then informed Stokes that Janis' application was not complete. Stokes contacted Janis Christiansen, who indicated that Dr. Coppin had the necessary information.

On May 20, 1982, Crown Life notified Crown Associates that underwriting on Janis' policy would terminate because a complete APR had never been received. After communication with Stokes, Crown Associates sent a telex to Crown Life on May 27, stating that the necessary information was available and would be forthcoming, and that the file should not be closed. On May 31, 1982, Crown Life responded by telex, indicating that they agreed to an extension for receipt of the information to June 3, 1982. Stokes was informed of this extension by Crown Associates on June 1, 1982.

Janis Christiansen was examined by Dr. John W. Obray of Soda Springs, Idaho who diagnosed her condition as lymph gland cancer. On June 8, 1982, without knowing about this diagnosis, Crown Life rejected Janis' application for insurance and refunded her first premium payment of $20.00,

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California sitting by designation.

for the reason that it had not received the requested medical information.

Max Christiansen immediately informed Bob Froelich that the policy rejection had been received, and also informed him that Janis had cancer. Froelich in turn informed Stokes of the cancer and the rejection apparently without stating a reason for this action. Stokes then made inquiry of Crown Associates as to the reason for the delay in issuing the policy. He did not divulge to Crown Associates that Janis had cancer. Stokes testified that he believed that the change in insurability suffered by Janis was irrelevant for purposes of delivering the policy since an insurance binder was in effect at the time of the diagnosis.

As a result of pressure put on Crown Life by Stokes through Crown Associates, Crown Life decided to ignore the rejection notice, to waive the APR requirement and issue Janis' policy. Crown Life and Crown Associates were still unaware of Janis' cancer at that point. The policy was forwarded to Crown Associates and on June 29, 1982, the policy, the policy invoice, and an amendment form were given to Stokes for delivery to Janis. The instructions issued to Stokes with the policy indicated that the policy would be issued upon completion of the amendment form, provided that there had not been a change in Janis Christiansen's insurability. The policy invoice itself included the following instruction: "If there has been a change in insurability, do not deliver this policy, but return it to the office with full particulars." The agreement signed between Stokes and Crown Associates contained a similar provision describing his duties to Crown Life. Stokes had Janis sign the policy on July 8, 1982, and without mentioning the change in her condition, returned the amendment form to Crown Associates' office, which forwarded it to Crown Life. Stokes assured Janis that she was insured.

Janis Christiansen died from the previously diagnosed cancer on December 24, 1982. Crown Associates was informed of Janis' death on January 6, 1983. Crown Life initially decided not to pay the claim filed by Max Christiansen on the ground that there had been a change in insurability prior to delivery of the policy and that the change had not been noted on the application amendment form. After discovering that Stokes knew of Janis' cancer and had nonetheless assured her that she was covered, and after being advised that agency law imputes an agent's knowledge to the principal, Crown Life concluded that it was liable on the policy issued to Janis and paid the $200,000 policy limit to Max Christiansen as beneficiary on August 11, 1983.

Crown Life filed suit against Stokes seeking indemnity for the $200,000 paid to Max Christiansen on November 30, 1983. The parties filed cross-motions for summary judgment in January of 1985 and the district court heard argument on the motions on March 28, 1985. Of course, each motion stood alone and unless there are no material facts in dispute, neither could be granted. On April 18, 1985, a Memorandum Opinion and Order was issued granting Crown Life's motion for summary judgment, concluding that "[h]ad Stokes informed Crown Life that Christiansen had been diagnosed as having cancer, Crown Life would not have been obliged to issue the policy and, therefore, would not have been liable for the $200,000 paid on her death." An amended Memorandum Opinion was filed on May 22, 1985, which avoided reference to an intentional breach of duty by Roger Stokes. Stokes appealed the district court's grant of summary judgment to Crown Life. This court has jurisdiction based on 28 U.S.C. Section 1291.

■ We review a district court's grant of summary judgment *de novo* to determine whether any genuine issues of material fact remain in the case and if the moving party was entitled to judgment as a matter of law. *Triangle Mining Co. v. Stauffer Chemical Co.*, 753 F.2d 734, 738 (9th Cir. 1985). Stokes contends that there were genuine issues of fact regarding his status as Crown Life's agent and his alleged breach of duty. The district court determined that "[t]he written agreement between Crown Life's General Agent, Drake,

and the defendant, Stokes, establishes an agency relationship between Stokes and Crown Life." The evidence relating to this subject is not undisputed. As such an agent, the court concluded that Stokes breached his fiduciary duty to disclose all facts material to Crown Life's decision-making process in issuing a policy for Janis Christiansen by not disclosing that Janis had lymph gland cancer. Stokes raises the question of the scope of his agency. He insists that he only had authority to solicit and submit applications for insurance policies, and that the agreement between Stokes and Crown Associates does not compel the conclusion that he was acting as an agent with any broader scope in this particular case.

■ Crown Life's complaint against Stokes for indemnity contained averments that Stokes was the agent of Crown Life. Stokes denied this in his answer and no agreement on this subject was ever reached between the parties. The evidence in the form of documents is at the most ambiguous. By a Crown Life printed Memorandum of Agreement, Stokes, the broker, was appointed by Crown Associates as an agent of Crown Associates "to solicit applications for such policies" as the company may issue. Crown Life's endorsement appears on the face of the document. Item 18(c) on the third page provides that the agreement will terminate automatically upon "[t]he termination of broker's license as a life insurance agent." Otherwise Stokes is referred to throughout as a broker. A Memorandum of Agreement between Crown Associates and Stokes concerning bonus payments refers to Stokes as the broker and Stokes signed both agreements as broker. In his deposition, L. Ray Drake refers to Stokes as a broker. The fact that Stokes was not licensed as a broker is not dispositive of the nature of his relationship with Crown Life nor is the fact that he was licensed as an agent and not a broker. Whether Stokes was an agent or a broker, and if an agent, the scope of the agency, presented a material factual issue which precluded adjudication by summary judgment.

If the evidence in the record is susceptible to more than one interpretation which in turn could lead to different and conflicting decisions on the merits, there are genuine issues of material facts and summary judgment is inappropriate. Federal Rule of Civil Procedure 56(d). The evidence in this case lends itself to a different interpretation than the one adopted by the trial court, one more closely in line with the contentions being made by Stokes. Since we are not in the role of finder of fact, we espouse no version of the facts, but for the sake of emphasizing that this case is a candidate for a formal trial we note a possible alternative point of view. Closely tied to the question of agency is the question of whether Janis Christiansen was responsible for obtaining a complete APR. It may be that normally the applicant is responsible for appearing for a medical examination or obtaining and furnishing an APR to the company. However, in this instance the record appears to show that Crown Life, through its general agent Crown Associates, voluntarily undertook to obtain and deliver the APR to Crown Life.

Janis signed a Crown Life medical authorization form at Crown Associates' request and Crown Associates undertook to get the information. At this same time Janis and her husband handed over a check for $40.00. Twenty dollars of this sum was for the initial premium payment on the insurance of Janis and twenty dollars on insurance of her husband. The check was cashed; the record shows that the husband's insurance was issued using his share of the $40.00 check as the first payment on his policy, the company retaining the rest on behalf of Janis. There was evidence to indicate that a Crown Life receipt and Conditional Insurance Agreement was given to Janis and her husband insuring both of them as provided in the terms of the policies to be issued. Max Christiansen was given a receipt, but was unable to locate the document. If the form of the receipt is questioned, this presents a question of fact which can not be resolved on summary judgment. According to the

Crown Life form of receipt and Conditional Insurance Agreement, the policy applied for would issue to her upon receipt of the APR showing her to be insurable at standard rates.

If the evidence in the record were to be construed as suggested above, Janis had done all that she was obliged to do since the company had agreed to get the APR from the doctor. Since the insurance company accepted the check covering insurance for Janis, it could not artibrarily reject the application. Whether it could do so on the ground that the APR was incomplete as it attempted to do, is a matter for the district court to decide applying Idaho law. However, we believe it was up to the company to prod the doctor. The APR was incomplete in unimportant if not in immaterial respects, rather than for failure to disclose illness. Now, was it entirely out of place for Stokes to ask why Crown Life was rejecting the application? Was Janis free from fault? Whose fault was it that the APR was delayed? What does the Idaho law require in these circumstances? Are there other relevant facts which could be developed at trial?

■ As is suggested above, one significant issue not addressed by the district court is whether the omissions in the medical information supplied to Crown Life were material. Viewing the evidence in the light most favorable to Stokes, we cannot say that Crown Life would have been entitled to terminate the conditional insurance because of a failure to provide material medical information. A number of factual questions relating to the relevance of the missing information and to the practice in the industry, *inter alia*, remain unanswered. Accordingly, wholly apart from the question whether Stokes was a broker or an agent, summary judgment was improper. If Crown Life could not have terminated the conditional insurance when it attempted to do so, then Stokes' alleged failure to (1) disclose the facts of which he had knowledge, and (2) faithfully carry out his obligations to Crown, may not have caused Crown any damage.

A trial on the merits can resolve the apparent conflicting evidence and inferences which may be drawn and then perhaps reach questions concerning conditional insurance which are unsettled in Idaho. The record as it stands does not supply a firm foundation for identification and adjudication of the legal issues in this field.

The district court's order granting summary judgment to Crown Life is reversed and the case remanded for a trial on the merits.

KENNEDY, Circuit Judge, dissenting:

I agree with the district court's determination that policy coverage ended when the insurer so notified the putative insured and returned her premium. The case before us is thus distinguishable from *Smith v. Westland Life Insurance Co.*, 15 Cal.3d 111, 539 P.2d 433, 123 Cal.Rptr. 649 (1975), and *Ransom v. Penn Mutual Life Insurance Co.*, 43 Cal.2d 420, 274 P.2d 633 (1954), where these objective tests of policy and coverage termination had not been met. Any reinstatement, therefore, was solely at the option of the insurer, and the insurer was misled by the request to waive further medical examinations when it was known to Stokes that the person to be insured had a terminal illness. That the company undoubtedly would have acted to grant coverage if the illness had not been present is irrelevant, as the company had the absolute right to decline coverage or further negotiations with this particular insured.

I agree as well with the district court that Stokes was an agent of the insurer, with a duty to advise of material changes in medical condition so the company could determine whether to waive further medical coverage with full knowledge of all the pertinent facts. Stokes argues that he was a broker and not an agent, but he has shown no issue of fact to be tried. The memorandum of agreement between Crown Associates and Stokes states that he is an agent for Crown Associates. There is nothing inconsistent, moreover, with his being both an agent and a broker; and if he

were a broker, he still would not be home free.

It is not clear to me what legal premises underlie the court's disposition and its order of remand. If Stokes is found to be an agent, is he liable, or was the insured somehow under a duty to issue the policy in any event so that the nondisclosure was harmless? Alternatively, is it implied that, if Stokes is not an agent, he is exonerated from liability even when he has delivered a policy contrary to express instructions, instructions which require it to be returned to the company if there is a change in the insured's medical condition? The district court and the parties are left to speculate on these and other matters, with little guidance for further trial proceedings.

I respectfully dissent.